*Court of Common Pleas, Dauphin County, December 17th, 1867.*

### The Commonwealth of Pennsylvania *v.* The Philadelphia and Reading Railroad Company.

An act of Assembly imposing a tax upon freight sent from this State into any other State or foreign country is contrary to the Constitution of the United States, and is void.

The fact that Congress has never enacted any law regulating commerce between the States does not give the State legislatures power to do so.

Pennsylvania Railroad Company *v.* The Commonwealth, 3 Grant, 129, distinguished.

By the Court.—The Philadelphia and Reading Railroad is used for the transportation of coal, etc., from Schuylkill county and other localities to the city of Philadelphia. It neither owns mines nor carries on the business of mining, but is merely a carrier. In the first two quarters of the year 1866, the company transported over its road, of the three classes described in the act of April 30th, 1864, 3,815,390 tons of freight. Of this it is conceded that ——————— were taken up and delivered within the State of Pennsylvania, whilst ——————— were carried on the road for the original purpose, as is claimed, of being sent abroad to other States or foreign countries, and was directly transferred from the cars to vessels for shipment, and was so transported. It is conceded that all of the taxes on articles received and delivered within the State has been paid, but the State claims to charge the company with a tax on all of its tonnage carried over the road, without regard to its original place of destination, amounting, in the aggregate, to $46,520. The account has been so settled at the treasury department, from which the company has appealed.

The first section of the act of April 30th, 1864, with its supplement, passed on the 25th of August, 1864, as we understand it, imposes a tax of two, three, and five cents per ton on each ton of certain described articles transported by any company doing business within this commonwealth, whether over a railroad, canal, slack-water, or natural navigation, or which is permitted to be transported over the works of such company for toll, except turnpike, plank-road, or bridge companies. This embraces every kind of transportation in steamboats on our lakes and rivers, on railroads, or canal, etc., provided either the carrier is a company, or the road or canal belongs to one, and includes all goods carried from one State, through Pennsylvania, to another beyond our borders, or from a foreign country, through our State, to one in the interior.

The meaning of the act is very clear, and the only question raised is as to its constitutionality. The first case in which the validity of this statute was presented for our consideration was

[Commonwealth of Pennsylvania *v.* Philadelphia and Reading Railroad Co.]

that of The Commonwealth *v.* The Erie Railway Company (1 Pearson, 345), a corporation created by the State of New York, but which passed for a few miles within the State of Pennsylvania. This court then held that the tax imposed on that company for carrying goods through our State, from and to points beyond our borders, was in plain violation of the Constitution of the United States, and that the tax could not be collected.

No other point was there raised, except the right to tax the commodities of other States in transit through this State, or to tax the railroad company which carried them. Soon after, another question was presented in an appeal taken by the Delaware, Lackawanna and Western Railroad Company (1 Pearson, 356), on account of a tax imposed under the same statute, on its tonnage, for goods taken up within the State of Pennsylvania and transported directly into other States, such being the original design of the carriers. We then decided that the tax thus attempted to be collected was illegal, as interfering with and restricting the free commerce and intercourse between the States, and that the statute, as thus applied, was in conflict with the Federal Constitution. Full and elaborate opinions were delivered in both cases, and we shall not now repeat our reasons there given, but refer to them as our exposition of the law. Writs of error were taken in both cases, but never argued, as they were considered correctly decided by the then attorney-general, Mr. Meredith. Some new positions have been assumed by the counsel for the commonwealth, supposed not to have been sufficiently considered and investigated in our former opinions. *First.* That as Congress has never enacted any law regulating the commerce between the States, there is nothing in the way of State action on the subject. *Second.* The tax imposed by the Pennsylvania statute is not on the goods transported into other States or foreign countries, but on the company itself as a carrier. There is no lien on the articles transported, but the claim is against the corporation through whose means they are transported. *Third.* The act does not impose a tax on the goods, but on the profits or income of a corporation created by our own laws and transacting its business within our borders. Expressions to be found in some of the decided cases or dicta used in the opinions of some of the United States judges, might lead to the belief that, until Congress had exercised its power to regulate the commerce between the States, it might be done by the States themselves. We consider it now settled that no State can impose a burden or duty on any commodity coming from another State within its borders, or passing beyond its boundaries into another State. It certainly could not upon foreign imports or exports, and the power to regulate the foreign commerce of the country is to be found in the same section as that between the States. No jurist will pretend that a State could impose a duty on the imports from foreign countries,

[Commonwealth of Pennsylvania v. Philadelphia and Reading Railroad Co.]

although Congress has failed to impose any. It would be an evidence that none was proper, as has been repeatedly said in regard to the regulating of commerce between the States. The failure to act proves that Congress considered no regulation was called for, and that the trade should be free and untrammelled. Judge McLean, in 7 Howard, 394, 395, and 398, 399, 400, declares that it is the same as with foreign nations, and is necessarily exclusive.

Such is the opinion of Judge Baldwin, in Groves v. Slaughter (15 Peters, 511), of Judge Story, in New York v. Miller (11 Peters, 158). To lay an export duty on the commodities of any State even transcends the power of Congress, see No. 5, sect. 9 of the first article of the Constitution of the United States. This contest would seem to be put at rest by the unanimous opinions of the Supreme Court of the United States, in Almy v. California (24 Howard, 169), where there was an attempt to tax the bill of lading of gold exported. The power of the State was denied, and Chief Justice Taney says that if this was an attempt to tax the gold itself, it would be seen at once, and conceded by all to be inadmissible. We are unable to see any distinction between taxing the exportation of gold, or coal, timber or other products. Although the inability of the State to impose a tax on passengers coming into the State was decided by a divided court, in 7 Howard, yet we find a more modern case settled by the same tribunal with great unanimity, in Crandal v. The State of Nevada, where it was held that the State could not impose a tax on a stage company for each passenger carried into or out of the State in their coaches. That, too, like the present, was not a tax on the passenger, but on the carrier. These decisions also answer and overturn the second position assumed on the part of the commonwealth. Third, this is not a tax on the income of the company, but on each ton of coal transported.

There is no doubt but that a tax on the income of the company created under the laws, and carrying on business within the State of Pennsylvania, would be valid. So also might be one on the net profits of the business, but this does not purport to be a tax on the business, but on the tonnage transported, whether carried at a profit or a loss. The tax, though nominally on the carrier, is really on the commodity carried, is such an impost or duty as might prevent its transportation abroad, for, if the State can tax the company two cents per ton, it may tax it two dollars. It is no more a tax on the mere business than was that imposed on the gold manifest or on the stage company, for each passenger carried. It is said in the argument that many of the cases were decided, because the legislature discriminated between the internal and external trade of the State. That is not the general ground of decision; for, whilst it is conceded that a State may impose any

[Commonwealth of Pennsylvania *v.* Philadelphia and Reading Railroad Co.]

amount of tax on their intra-territorial trade, it can levy nothing on that which comes to, goes from, or passes through its borders, as thereby the burden is imposed on citizens of other States. We are, it is contended, bound by what is said by our own Supreme Court, in The Pennsylvania Railroad Company *v.* The Commonwealth of Pennsylvania (3 Grant's Cases, 129).

In the first place, that was, in our opinion, no question of taxation, and, in the second place, it is not binding on this court. When the contest arises under the Constitution of the United States, we must be governed by the decisions of the Federal judiciary alone. They are paramount. Some of the questions then open are since settled. This court decided the Tonnage Tax Case, as it was called, on the ground that it was not a tax, but a contract. The corporation, as a bonus for its charter, agreed to pay the State, as a bonus, a certain sum per ton for freight transported on its road. This was not a regulation of commerce, but an agreement between the parties, and had no greater effect than if the proposed artificial person had contracted to pay a gross sum of money, or a certain annual sum, for leave to construct its road through the State. It was not proved that any addition was made to the freight by reason of the tax; on the contrary, the company carried freight brought from beyond our borders at a lower rate than that imposed on the domestic trade of the same character. It clearly appeared that the charge, called a tax, fell on the corporation itself, as it was designed it should, and not on the outside transporters. We cannot doubt the power of the parties to enter into such a contract, which is a mutual agreement between them, whilst a tax is in the nature of a command proceeding from the sovereign to the subject. By taxation commerce may be regulated, burdened, or entirely interdicted.

We instruct you that all freight transported on the defendant's road which was designed and intended to seek a market within the State, is subject to the tax imposed by the first section of the act of April 30th, 1864. That it will be presumed to be so intended until the contrary is shown. Therefore, where freight is loaded on the cars of the company, and brought to Richmond, or any other point, for sale, it is subject to the tax, although it may be sold to be shipped abroad. When the article is sold for foreign shipment, before being loaded on the defendant's cars, is then placed thereon and carried directly to the point of transshipment, loaded on vessels, and actually sent into other States or foreign countries, the railroad company is not bound to pay any tax on such tonnage. To apply the act of Assembly to such tonnage, would be a burden on the commerce of the State to which it is to be carried, and thus far a regulation of commerce between the States in violation of the Federal compact, and the statute cannot be so construed without rendering it unconstitutional. You will,

[The Commonwealth of Pennsylvania *v.* The Phœnix Iron Company.]

therefore, render your verdict in favor of the defendant for all taxes charged on the tonnage carried on the road originally destined for other States or foreign countries, and so sent, and in favor of the commonwealth for all other taxes thereon, if not already paid.

NOTE.—This case was reversed by the Supreme Court of Pennsylvania (12 P. F. Smith, 286). The opinion of that court was reversed by the Supreme Court of the United States, and the decision of the Court of Common Pleas affirmed (15 Wallace, 232).

*Brewster and Smith, for plaintiff.*

*Gowen, Kunkel, and Lamberton, for defendant.*